## SUPREME JUDICIAL COURT

FOR THE COUNTY OF

# YORK.

**APRIL TERM,**

1829.

---

### SEWALL & ALS. *vs.* RIDLON.

It is no valid objection to an ancient record of partition by petition, under *Stat* 1783, *ch.* 41, and *Stat.* 1786, *ch.* 53, that no interlocutory judgment was formally entered, if it appears that notice was regularly given, and no one appeared to object, and that thereupon commissioners were appointed to make partition.

It is not necessary that commissioners, appointed to make partition under the statutes, should be inhabitants of the county in which the lands lie.

Proceedings in partition, in the Supreme Judicial Court, by petition pursuant to the statutes, may lawfully be in any county in the State, if no person appears to contest the title of the petitioner, or if the controversy is an issue of law. But when an issue of fact is joined, the record is to be remitted for trial of the issue, to the county where the lands lie.

But if the trial is in any other county, and without consent of parties, yet the judgment will not be void for want of jurisdiction; but will be good till avoided by writ of error.

THIS was a petition for partition of a tract of land in *Hollis*, in this county, to which the respondent pleaded his sole seisin. At the trial before *Parris J.* at the last *September* term, the petitioners, in

Sewall & als. *v.* Ridlon.

proof of their title, offered in evidence the record of proceedings in the Supreme Judicial Court of Massachusetts, in a process by petition for partition, preferred by *Patrick Tracy & als.* in *Suffolk*, at *February* term, 1788, against persons unknown ; in which the court ordered notice, returnable in *Essex* at the *June* term ensuing ; at which time " no one appearing to object thereto," the court appointed commissioners, one of whom was *Robert Southgate, Esq.* of *Scarborough*, in the county of *Cumberland*, to make partition ; and at the following *December* term in *Essex*, the warrant being returned, the court ordered that it " be accepted, and that the same be recorded." No formal judgment, interlocutory or final, appeared to have been entered. The tract of which partition was prayed for, was described as " the plantation called *Little-falls*, containing about thirty six square miles, bounded on the head or northwest end of the town of *Biddeford*, and carries that breadth being four miles, adjoining *Saco* river, to the river called the little *Ossipee* ;—excepting the several lots adjoining *Saco* river, which Maj. *William Phillips*, in his lifetime, by deed, conveyed to *Tyng, Russell, Leverett* and *Pattershall*, now in the actual tenure and occupation of their several heirs and assigns ; and some small tracts laid out by virtue of grants made by the late Province of *Massachusetts-bay ;* and excepting one quarter part set off to *Josiah Waters*, of *Boston*."

This evidence the Judge rejected, because the proceedings were had in a county other than that in which the lands were situated ; and a verdict was taken by consent, for the respondent, subject to the opinion of the court upon the admissibility of the evidence.

*J.* and *E. Shepley*, for the petitioners, contended that the evidence ought to have been admitted. As there was no issue joined, the proceedings might be had in any county. The jurisdiction of the Supreme Judicial Court, as it is commensurate with the State, may well be exercised over any subject matter, in any county, where it is not made local by particular statutes. The *Stat.* 1786, *ch.* 53, only provides that certain particular facts shall be tried in the county where the land lies, unless it is otherwise agreed. But where these are not in controversy, the proceedings ought to be had wherever the court

may deem it most for the convenience of the parties. *Mitchell v. Starbuck* 10. *Mass.* 5. *Vaughan v. Noble* 6. *Mass.* 252. *Bonner, ex parte.* 4. *Mass.* 122. The formal entry of a judgment *quod partitio fiat* was not necessary. *Southgate v. Burnham* 2. *Greenl.* 369.

*J. Holmes* and *D. Goodenow,* for the respondents, argued that the record was inadmissible for the purposes for which it was offered.

1. It contained no judgment *quod partitio fiat.* The statute of 1786. *ch.* 53. converts what was an amicable proceeding into an adverse suit ; and in *Cook v. Allen* 2. *Mass.* 462. it is settled that an adverse interest is let in, and that one claiming to be sole seised, and neglecting to appear, is concluded as to his right of possession. As these proceedings, therefore, are to have the effect of a judgment at common law, they ought to be conducted with the same forms and solemnities. The warrant in the one case, is of no greater value than the *habere facias* in the other ; neither being proof of a judgment. Each is an official writ, issued in vacation, and without judicial sanction.

2. But if there had been such judgment, it was rendered in the wrong county. In all proceedings touching the title to real estate, whatever an adverse party has a right to contest, must be transacted in the county where the lands lie. The title to real estate has never, since *Magna Charta,* been tried but by a jury of the vicinage ; and this, at most, extends no farther than the limit from which jurors may be summoned to serve on the trial. And the care of the legislature to preserve this right is manifest in the provision excluding all implied consent, and requiring the trial to be had in the county where the lands lie, unless the contrary is expressly agreed. As, therefore, the proceedings in the present case were not had in the county of *York,* they were *coram non judice,* and merely void. The judgment cannot avail for any purpose whatever ; and may be avoided collaterally, by plea or otherwise. *Hathorne v. Haines* 1. *Greenl.* 238.

3. The description, also, of the land whereof partition was prayed, was too loose, general, and uncertain, and could not be suffered to go to the jury.

4. And the commissioners were not all freeholders of the county.

Sewall & als. *v.* Ridlon.

It is true, the statute on this subject is not express; but so is the common law, by the principles of which these proceedings ought to be governed. The sheriff was required to make partition by the oath of twelve good freeholders, *de vicineto ;* and the commissioners, provided by the statute, are only a substitute for the jury.

MELLEN C. J. delivered the opinion of the Court.

The question is whether the copy of the proceedings in the Supreme Judicial Court of Massachusetts in the year 1788, was properly rejected, when offered to be read in evidence by the counsel for the petitioner. If not, the verdict must be set aside and a new trial granted. Several objections have been urged against its admissibility, on the ground of certain alleged irregularities in those proceedings.

One irregularity or imperfection, as contended, is in the description of the tract of land, whereof partition was prayed. This objection is founded on an intimation in a note subjoined to the report of the case of *Cook v. Allen,* cited in the argument. But on examining the great boundaries of the tract referred to, which from their nature must have been notorious, they must be considered perfectly intelligible to all persons interested ; and though certain parcels were excepted by particular references or descriptions, yet forty years ago those excepted parcels must, in all probability, have been well known to the co-tenants, as they all claimed under *William* and *Bridget Phillips,* by title derived after many of the excepted parcels had been conveyed by said *William Phillips.* These co-tenants must be presumed to have known that their common tract did not include those parcels. As to them, therefore, the description in the petition could not have been uncertain or unintelligible ; and it does not appear that *Ridlon,* the respondent, or in fact any other persons, at that time, were in possession of any part of the land described, who could have been deceived, even if the description had been less definite than it was. This objection was not very seriously urged by the counsel, and we all consider it unsubstantial.

In the second place it has been contended that no formal judgment was entered, either interlocutory or final. This is true ; but it ap-

pears that notice was given according to the order of court; that no person appeared to answer to the petition ; and thereupon commissioners were appointed to make partition, and their return was duly made on oath, and accepted.   The proceedings, in respect to the above particulars, were not conducted with the same exactness as at the present day.   In considering this objection we must remember we are now examining a record more than forty years of age, and in relation to the mere form of it ; and we should remember also that the application of rigid rules and principles to such ancient transactions as to form, where there is plain and intelligible substance, would often create confusion, unsettle titles which may have long been considered as firmly established, and produce injustice.   On principles of this nature this court proceeded in the case of *Southgate v. Burnham*, cited in the argument, which very nearly resembles the present case, as to the informalities in question,   We feel it our duty to overrule this objection.

Another supposed illegality is the appointment of *Robert Southgate* an inhabitant and freeholder in the county of *Cumberland*, as one of the commissioners, though the lands to be divided were in the county of *York*.   We consider the act of 1783, *ch.* 41, as a satisfactory answer to this objection.   That statute does not require that the commissioners should be inhabitants and freeholders of the same county in which the lands lie.   Such was the construction which the court gave to the act, when they appointed Mr. *Southgate ;* and we do not feel at liberty or disposed to question its correctness on this occasion.   We therefore overrule this objection also.

The last point, and that which the counsel have principally relied upon, is that the informal interlocutory and final judgments were both entered in the county of *Essex*.   It is admitted that a petition for partition may be entered in any county and an order of notice there made, because the process does not assume an adversary character till the return of notice to all concerned ; yet the counsel have strenuously contended that all parts of the process, in which any respondent has a right to appear, and which he may legally contest, must always be conducted and decided in the county in which the estate is situated ; and that such should have been the course of proceedings

by the Supreme Court of Massachusetts in the case in question. This leads us to the examination of the statutes of 1783 and 1786 respecting the partition of real estate. The former contained no provision for the trial, by jury or otherwise, of the question of tenancy in common alleged in the petition, if any person appeared and contested the existence of such tenancy, or the amount of common interest therein specified. By that act, the Supreme Judicial Court, having general jurisdiction over the Commonwealth, were accustomed to sustain and complete proceedings in partition in any county or counties, without reference to the particular county in which the lands, whereof partition was prayed, were situated, when no persons appeared and objected. When there was an objection, then all further proceedings were stayed. This inconvenience occasioned the act of 1876, *ch.* 53, which provided for the trial of the question of co-tenancy, when the allegations in the petition respecting it were contested by a respondent ; and the legislature deemed it expedient in conformity to the general principle in relation to the locality of real actions, so far to adopt that principle, as to declare that it should be tried in the county where the lands lie. The language of the proviso is, " that the trial of the fact by a jury, whether the petitioner holds in common, in the same proportion he alleges in his petition, or in a lesser proportion, shall be determined in the county where the lands lie, unless the parties shall expressly agree to the contrary ; in which case the trial by jury may be had in such county as the parties agree upon." The restriction contained in the above proviso is expressly confined to the trial of disputed facts by a jury. If the respondent's plea in bar, or the pleadings subsequent thereto, should lead to an issue in law, the proviso would not embrace it and confine the trial to the county. At any rate the proviso has respect only to the trial of the issue formed ; in all other particulars touching the proceedings, the court are wholly unrestrained. The court, therefore, might, in their discretion, receive a petition in one county, and order notice returnable in another, though not the county where the lands lay ; and if no person should appear to contest the allegation of co-tenancy, there would be nothing in the act of 1786 to prevent the court

from entering the interlocutory judgment there, and afterwards accepting the return in a third county. If, on the return of the notice, a respondent appeared, and contested the alleged co-tenancy, the court would then be obliged to transfer the petition to the county where the lands were situated, that the jury of that county might try it, according to the proviso of the act. In this way, the right to a trial by jury, in usual form, is preserved to the citizen. This construction is sustained by the latter part of the proviso relating to a trial in any county on which the parties may expressly agree. This shows that the legislature contemplated the case of a petition made returnable, and actually returned, in a county where the lands are not situated; because, until after notice returned, there could not regularly be any respondent, and of course, not any parties to enter into the express agreement. In the case in question, however, there was no appearance; no one was disposed to contest the allegations of the petition, and therefore there was nothing requiring the decision of the cause to be in the county of *York;* for there was no fact in controversy. All constitutional and legal rights have been preserved, with full liberty to all to enjoy them. It has not been shown that any injuries or inconveniences have been the consequence of the exercise of the general jurisdiction of the court, in the manner apparent on their proceedings. We hear no complaint from any of the former co-tenants, or any interested in the lands at the time of notice or partition.

Since the organization of this court, the course pursued has been to receive petitions for partition in any county, but to order notice returnable in the county where the lands lie; though the language of our statute is the same as that of Massachusetts, relating to this subject. This has been considered the mode most convenient, all circumstances taken into view. The State being so far settled, and this court holding one or more terms annually in each county, it seems advisable to continue it. If the co-tenants of any large tracts reside out of the State, still, the partition must be made by the authority of some court within the State, and the proceedings may be had in the county where the lands lie, as easily as in any other. In deciding, however, on the legality of the mode adopted by the Supreme Judicial Court of Massachusetts forty years since, such considerations as

may now properly influence this court in the exercise of its discretionary power, ought not to affect our decision of the present cause.

We have thus examined and given our opinion upon all the objections which have been urged by the counsel for the respondent, presuming this course the most useful to the parties, and not unimportant to others. The answer which we might have given, and which would have been decisive of this cause, is, that if the proceedings in question were irregular, and not in conformity to the provisions of the act of 1786, still the judgment and proceedings would not be void, but only voidable in the usual manner, and could not be impeached in the summary and indirect manner contended for by the respondent's counsel. The court had general jurisdiction of the subject; and if they had conducted improperly in its exercise, the judgment and proceedings should be examined on error; but till the judgment shall be so reversed, it must, like other judgments, be respected as binding the rights of the parties, at least so far as their possessory rights are involved. We are therefore all of opinion that the verdict must be set aside, and a new trial granted.